**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2064-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DARRYL D. TOWNSEND,
a/k/a D-BLOCK, and
ANDREW DEEN,

    Defendant-Appellant.

_____

Submitted October 16, 2025 – Decided December 24, 2025

Before Judges Mawla and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 17-02-0261.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the briefs).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Maura Murphy Sullivan, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a supplemental brief on appellant's behalf.

PER CURIAM

Defendant Darryl D. Townsend appeals from the January 26, 2024 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

The underlying facts of defendant's conviction and sentence for first-degree murder, third-degree possession of a weapon for an unlawful purpose, and fourth-degree unlawful possession of a weapon are set forth in our prior opinion on defendant's direct appeal. State v. Townsend, No. A-5387-17 (App. Div. Aug. 28, 2020). In that decision, we rejected defendant's counseled and self-represented arguments and affirmed the conviction and sentence, id. (slip op. at 27), and the Supreme Court denied defendant's petition for certification, State v. Townsend, 245 N.J. 146 (2021). We need not repeat the facts detailed in our prior opinion but provide the following recitation to give context to the issues raised in this appeal.

On November 5, 2016, Camden County Metro Police Officers Michael Herring and Colin Mair responded to a call about a child custody dispute. Officer Herring's body worn camera (BWC) was activated. The officers met

with Nakeama Nokes on the front porch of her residence. Nokes's teenaged son and daughter were present in the home. Defendant, who was Nokes's ex-boyfriend, was asleep in Nokes's upstairs bedroom.

While the officers spoke to Nokes, her boyfriend Tyree Kirkpatrick arrived, entered the home, and went upstairs. When Kirkpatrick walked upstairs, Nokes turned away from the officers and yelled defendant's name.

Officer Herring stepped away from Nokes to radio a sergeant about the child custody issue and when he returned to the front door, Nokes had gone upstairs. At trial, Nokes's son testified he and Nokes followed Kirkpatrick into Nokes's bedroom. Defendant and Kirkpatrick began arguing and Kirkpatrick told Nokes and her son to leave the room, which they did.

The son testified he went to his sister's room, heard "a hit," and looked into Nokes's bedroom. Contrary to his later statement to police, wherein he claimed not to have witnessed anything, the son testified at trial he saw defendant stab Kirkpatrick.

Upon hearing the commotion, the officers entered Nokes's home and went upstairs. Kirkpatrick, who was bleeding from stab wounds, said "he just stabbed me," and Officer Herring went outside to call for emergency help. While making the call, Officer Herring looked up and saw defendant attempting to climb out

3

the second-story window of Nokes's bedroom. The officer unholstered his firearm and ordered defendant to get back into the house.

Defendant ran downstairs repeatedly yelling, "He's in here" and "He got a gun." The officers took defendant to the ground, handcuffed him, placed him in the patrol vehicle, and transported him to the jail.

While detained, defendant placed two recorded phone calls, which were played for the jury without objection from defense counsel. In one call, he recounted the confrontation with Kirkpatrick and commented "well, good thing it wasn't the other way around and he got me." In the other call, he again described the confrontation with Kirkpatrick, explaining "one thing led to another, we got into a little scuffle and that's what happened. Like, fuck. It ain't like I did it on purpose or something."

Also without objection from the defense, the jury viewed BWC footage of an officer's on-the-scene questioning of Nokes's daughter, wherein she stated defendant "always had a pocketknife with him. A real big pocketknife." The officer asked if she knew "what knife [defendant] used to stab" Kirkpatrick, but her response was inaudible. At one point in the video, a barely audible unidentified male, later identified as Nokes's son, said the phrase "saw him stab in the neck."

Officers did not find a knife in Nokes's bedroom, and two knives discovered elsewhere in the home were ruled out as the murder weapon. Several weeks later, Nokes's son reported he was looking for Nokes's cell phone behind her bed and found an open folding knife. Kirkpatrick's blood was on the blade, but the handle did not yield any forensic evidence linking it to defendant.

During deliberations, the jury asked to review the BWC footage from the point defendant tried to jump out the window to when the officer talked to Nokes's daughter. The jury then asked to review the video wherein the officer asked the daughter about the knife defendant carried. Both videos were replayed for the jury without objection by defense counsel.

Following our affirmance on direct appeal, defendant filed a timely petition for PCR, arguing ineffective assistance of trial counsel based on counsel's failure to object to the video of Nokes's daughter, including the portion in which the then unidentified male said "saw him stab in the neck." In support of his petition, defendant provided an affidavit of trial counsel stating he did not seek to exclude or redact these portions of the video. Trial counsel certified:

> After consultation with [defendant] it was decided that we wanted [the BWC footage] to be admitted because it demonstrated the huge amount of blood at the scene and contrasted with the complete absence of blood on [defendant]. It also showed the demeanor of the victim's [girlfriend]. At the same time, we did

5

successfully move to exclude prejudicial voice mail messages and most of the jail calls presented by the prosecution.

Counsel further certified his failure to move to exclude or redact the portions of the BWC video depicting the daughter's interview and son's statement "was not strategy but was simply an oversight. There was no discussion with [defendant] about redacting this footage. This portion did not support any defense theory. But for the oversight, I would have sought redaction of this portion."

After considering argument, the PCR judge denied the petition without an evidentiary hearing. The judge noted defendant's direct appeal also alleged error in the admission of the interview with Nokes's daughter because she did not testify at trial, including the "barely audible unidentified male" voice saying "saw him stab in the neck." The judge discussed our prior opinion:

> The Appellate Division agreed that this portion of the footage should not have been admitted into evidence because it was testimonial hearsay and, therefore, the defendant had the right to confront that witness at trial. That witness did not testify at trial.

> The Appellate Division found, though, that the admission of that evidence was not reversible error, first, under the theory that it was inviting. As the Appellate Division sa[id], "obviously, the defense consented for strategic reasons to the admission of all [BWC] footage." . . .

> The [Appellate Division] went on to say, . . .

> Nor do we perceive that the admission of the colloquy between the officer and Nokes's daughter was plain error. Nokes's son's testimony that he saw defendant stab Kirkpatrick, defendant's admissions during the intercepted jail calls, and the evidence of his flight render remote the possibility that the [BWC] evidence led to an unjust verdict. In light of the discovery of the pocketknife, albeit it well after the murder, and the finding of Kirkpatrick's blood on that knife, Nokes's daughter's statements linking defendant to a pocketknife was not of such a nature to have been clearly capable of producing an unjust result.

The PCR judge found trial counsel's "sworn acknowledgment of his oversight [was] sufficient to demonstrate that he neglected to act with reasonable professional judgment," which satisfied the first prong of Strickland v. Washington, 466 U.S. 668 (1984). However, the judge determined defendant did not show "that[,] but for counsel's unprofessional errors, the result of the proceeding would have been different." Citing Strickland, 466 U.S. at 694, the judge continued, "Stated differently, . . . as I just quoted, there's got to be a showing . . . of a 'reasonable probability that[,] but for counsel's unprofessional errors, the result of the proceeding would have been different.'"

The judge opined the second Strickland prong is "functionally no different than" the standard of review for plain error, which is whether the error was

7                                                                    A-2064-23

clearly capable of producing an unjust result. The judge found we already answered that question by holding the admission of the unredacted BWC footage did not "raise[] reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached."

Pointing, as we did, to Nokes's son's trial testimony he witnessed defendant stab Kirkpatrick, defendant's attempted flight from the scene and subsequent jail call admissions, and the bloody pocketknife, the PCR judge concluded "it's not reasonable to believe that the . . . admission of that evidence produced an outcome that would not have been produced even if that evidence was not presented." Therefore, the judge denied the petition.

II.

On appeal, defendant's counseled brief raises the following issues:

POINT I

AS DEFENDANT HAD SHOWN THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL AND THAT HE HAD BEEN PREJUDICED THEREBY, THE PCR COURT ERRED BY DENYING HIS PCR PETITION.

POINT II

AS THERE WERE GENUINE ISSUES OF MATERIAL FACT IN DISPUTE, THE PCR COURT ERRED BY DENYING DEFENDANT'S PCR

8

PETITION WITHOUT AN EVIDENTIARY HEARING.

In his self-represented supplemental brief, defendant contends:

POINT I

[DEFENDANT] HAS MET BOTH PRONGS FOR HIS INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM UNDER STRICKLAND AND FRITZ,[1] BOTH INFRA, IN SHOWING THAT TRIAL COUNSEL WAS INEFFECTIVE IN ALLOWING A CONSTITUTIONAL ERROR TO OCCUR THAT VIOLATED HIS RIGHTS TO CONFRONT HIS ACCUSERS, INFRINGING UPON HIS CONSTITUTIONAL RIGHTS, U.S. CONST., AMENDS. V, VI, AND XIV; N.J. CONST., ART. I, ¶¶ 1, 8 AND 10.

    A. The PCR Judges Has Already Found That [Defendant] Has Met The First Prong For His Ineffective Assistance Claim.

    B. The PCR Judge Used The Incorrect Legal Analysis In Deciding [Defendant's] Ineffective Assistance Claim.

    C. [Defendant] Has Established The Second Prong Of His Ineffective Assistance Claim.

POINT II

[DEFENDANT] SUFFERED A FUNDAMENTAL INJUSTICE REQUIRING THIS COURT TO INTERVENE AND GRANT RELIEF, WHICH VIOLATED HIS CONSTITUTIONAL RIGHTS, U.S.

---

[1] State v. Fritz, 105 N.J. 42 (1987).

CONST., AMENDS. V, VI, AND XIV; N.J. CONST.,
ART. I, ¶¶ 1, 8, AND 10.

To succeed on a claim of ineffective assistance of counsel, a defendant must establish by a preponderance of the evidence both prongs of the test set forth in Strickland, 466 U.S. at 687, and adopted by our Supreme Court in Fritz, 105 N.J. at 58. State v. Gaitan, 209 N.J. 339, 349-50 (2012). First, a "defendant must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. A defendant must demonstrate "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid. Because the Constitution requires "reasonably effective assistance," an attorney's performance may not be attacked unless it "was not 'within the range of competence demanded of attorneys in criminal cases'" and instead "fell below an objective standard of reasonableness." Id. at 687-88 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).

Under the second Strickland prong, a defendant must "affirmatively prove" with "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Gideon, 244 N.J. 538, 551 (2021) (quoting Strickland, 466 U.S. at 693-94). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Ibid. (quoting Strickland, 466 U.S. at 694).

Because the PCR judge denied the petition without an evidentiary hearing, we review the order de novo. State v. Harris, 181 N.J. 391, 421 (2004). We also review the decision to deny the petition without an evidentiary hearing for abuse of discretion. State v. Preciose, 129 N.J. 451, 462 (1992).

Because the PCR judge found defendant established the first Strickland prong, we turn to the second prong. Defendant's primary contention is the judge erred by substituting the plain error standard for the Strickland standard. He argues that by applying the more stringent plain error standard, the PCR judge committed a fatal error and must be reversed.

Rule 2:10-2 sets forth the plain error standard: "Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result . . . ." Under Strickland, a defendant must only show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Gideon, 244 N.J. at 551 (quoting Strickland, 466 U.S. at 694).

While the PCR judge discussed both standards of review, he ultimately denied the petition under the correct standard. On direct appeal, we determined the admission of the unredacted BWC video was not clearly capable of producing an unjust result, given the other evidence supporting the jury's guilty

11

verdict. The PCR judge mistakenly found that holding to be "functionally the same" as the second <u>Strickland</u> prong but nevertheless considered the petition under the correct standard, concluding defendant failed to demonstrate a "reasonable" probability "that the admission of that evidence produced an outcome that would not have been produced even if that evidence was not presented." Having reviewed the record, we discern no reason to disturb the PCR judge's determination.

Lastly, because defendant did not establish a prima facie case for relief, material issues of disputed fact, or that an evidentiary hearing was necessary, the denial of his request for a hearing was not an abuse of discretion. <u>R.</u> 3:22-10(b); <u>see</u> <u>Preciose</u>,129 N.J. at 462-63.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

12

A-2064-23